UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT JACOB MCGEE | § | CIVIL ACTION NO 08-4715 |
| VERSUS | § | SECTION "J" JUDGE BARBIER |
| ROWAN COMPANIES, INC. | § | MAG. (4)  MAG. JUDGE ROBY |

*RULE 9(h) ADMIRALTY CLAIM*

<u>PRE-TRIAL ORDER</u>

**I.**      The final  pre-trial conference in this matter was held July 30, 2009 at 11:00 a.m.

**II.**      <u>APPEARANCE OF COUNSEL</u>

Berney L. Strauss, #12527
Rhett E. King, #23811
Strauss & King, APLC
Counsel for Plaintiff,
Robert Jacob McGee

T. Patrick Baynham, T.A. (#16805)
J. Calvin Box (#18809)
Baynham Best, LLC
Two Lakeway Center, Suite 950
3850 N. Causeway Boulevard
Metairie, Louisiana 70002
Telephone: (504) 837-3878
Counsel for Defendant,
Rowan Companies, Inc.

III.    **DESCRIPTION OF THE PARTIES:**

    A.    Plaintiff, Robert Jacob McGee, is a Jones Act seaman and employee of Rowan Companies, Inc.   He is twenty-nine years old and resides with his wife and children in Kosciusko, Mississippi;

    B.    Made defendant herein is Rowan Companies, Inc. ("Rowan").  Rowan is a Delaware corporation with its principal place of business in Houston, Texas.  At all relevant times hereto, Rowan employed plaintiff, Robert McGee, a resident of Kosciusko, Mississippi.  At all relevant times hereto, Rowan owned and operated the Mobile Offshore Drilling Unit, the GORILLA IV, to which plaintiff was assigned.

IV.    **JURISDICTION**

This is an admiralty claim under Rule 9(h).    There is no issue of jurisdiction or venue.

V.    **PENDING OR CONTEMPLATED MOTIONS**

Plaintiff reserves the right to file Motions as allowed by the Federal Rules of Civil Procedure, this Court's Local Rules and this Court's Scheduling Order, including but not limited to motions *in limine*.

Rowan reserves the right to file Motions as allowed by the Federal Rules of Civil Procedure, this Court's Local Rules and this Court's Scheduling Order.

VI.    **SUMMARY OF MATERIAL FACTS**

    A.    Plaintiff's brief summary of the material facts in this case:

Mr. Robert McGee is a resident of Kosciusko, Mississippi, a small town located one and one-half hours north of Jackson, Mississippi.   He resides there with his wife and two young children.

Mr. McGee was employed by Rowan Companies, Inc. as a roustabout and member of the crew aboard its drilling vessel, MODU GORILLA IV.   On March 2, 2006, plaintiff and his co-worker, Brandon Stewart were ordered by their supervisor, Alex Miles, to change out the bridle lines on the vessel's starboard side crane.   Mr. McGee had never performed this operation prior to March 2, 2006.   Mr. McGee's supervisor, Mr. Miles, did not provide any instruction to either Mr. McGee or Mr. Stewart regarding the means and methods of changing out these bridle lines.   There was no job safety analysis on the changing of the bridle lines.   As part of the bridle line changing operation, the starboard side crane's block was 'chained down' on the boom.   A series of 'pins' connect the bridle lines and in order to change out the bridle lines, the connecting pins must be removed.   The two men, McGee and Stewart, managed with some difficulty to remove the connecting pins, except for one.   Try as they might, they could not free the final pin.   Noticing that his men were making no progress with the last pin, Mr. Miles, the supervisor, climbed onto the crane boom with a pry bar and began to pry the pin free.   Unfortunately at this point, the block shifted onto Mr. McGee severely injuring his left knee and lower leg.

Mr. McGee's injuries were the direct result of Rowan's negligence and the unseaworthiness of its vessel.   Rowan failed to provide Mr. McGee with a safe place to work, an absolute duty under the Jones Act.   Among other acts of Jones Act negligence, there was an insufficient JSA performed regarding the potentially dangerous nature of the on-going operation, especially in light of plaintiff's inexperience.   The crane's block was not safely or properly secured.   Similarly, the vessel was unseaworthy.   The unsafe and improper chaining of the block constituted an unseaworthy condition.

Mr. Edward Geoff Webster, naval architect and engineer, has offered his expert opinion that the manner in which the operation was being performed was dangerous and ran afoul of basic safety procedures.  Further, that the manner in which the operation on the vessel was conducted  violated safety regulations and statutes designed to protect workers such as Mr. McGee.

Following medical evacuation to Terrebonne General Hospital and at Rowan's direction, McGee was placed under the care of Capitol Orthopedics & Sports Medical Center in Jackson, Mississippi and Drs. McCraney and Dulske.   An MRI revealed tears of the left anterior cruciate ligament and medial collateral ligaments.     Worst still, clinical examination indicated the development of Reflex Sympathetic Dystrophy (RSD), also known as Complex Regional Pain Syndrome (CRPS), a potentially debilitating neurological disorder.    This RSD condition was diagnosed based upon indisputable and unmistakable objective findings.

Mr. McGee's care has been managed by Dr. Michael Dulske, an orthopedic surgeon at Capitol Orthopedics.   Dr. Dulske treated Mr. McGee's orthopedic knee complaints and performed two surgeries on Mr. McGee's torn ligaments.

Dr. Dulske referred Mr. McGee to Dr. Dodd for treatment of the RSD which included multiple sympathetic nerve block injections.  Dr. Dulske also referred Mr. McGee to Dr. Williams for the implantation of spinal cord simulators to combat RSD.    Dr. Dulske has followed and managed Mr. McGee's care for RSD.     As part of its cure obligation, Rowan paid for both the orthopedic surgeries and RSD treatment, including the multiple sympathetic ganglion blocks and the implantation of a spinal cord stimulators.

Mr. McGee has had all of the symptoms suggestive of RSD, which have been documented by his treating physicians during the course of the last three and one half years, including but not limited to pain, hypersensitivity, temperature variance, discoloration and mottling, allodynia, and swelling.

 For example:

(1)     Dr. Dulske noted "slightly decreased temperature of left leg upon palpation compared to right leg";

(2)     Dr. Dodd noted "persistent left knee swelling and discoloration" and "digital temperature readings of his left foot were 86.6 degrees while his right foot was 90.3 degrees";

(3)     Dr. Williams noted "left lower extremity presents with edema from mid thigh to foot, warm to touch, palor (sic)";

(4)     Dr. Sacks noted swelling, pain, discoloration, temperature variance and hyper-sensitivity in the lower extremity; and,

(5)     Dr. Patel, his treating neurologist, has confirmed the diagnosis of RSD/ CRPS.

Dr. Dulske's note of January 10, 2008, which  details a physical examination Mr. McGee's left lower extremity is illustrative of Mr. McGee's constellation of RSD symptoms:

> There is decreased range of motion, especially involving flexion of the left knee.  **The left knee appears to be cyanotic and modeled(sic).  The left knee, globally, is edematous and there is increased hair growth around the left knee as compared to the right knee.  There is hypersensitivity to light touch and there is also allodynia**

**around the medial anterior and lateral aspects of the left knee.**

Since March 2, 2006, Mr. McGee has been beset by two significant physical medical conditions – firstly, the RSD condition, and secondly, the reconstructed anterior cruciate and medial collateral ligaments.   Mr. McGee continues to suffer with and to treat for the RSD condition.  But, Mr. McGee has reached MMI regarding the orthopedic injuries to his left knee.   The testimony will support the plaintiff's contention that significant future treatment is necessary and future medical expenses will be incurred.

In addition to the physical injuries sustained by Mr. McGee during the incident aboard the MODU ROWAN GORILLA IV, Mr. McGee also suffers with post-traumatic stress disorder, depression and anxiety.   Mr. McGee is being treated by Dr. Arthur Tarbox, a PTSD specialist and psychologist.     Dr. Tarbox will testify that Mr. McGee is suffering with post-traumatic stress disorder and a major depression as a direct result of the traumatic incident and injuring on the rig.

The effects of these physical and emotional conditions on the plaintiff and his family have been severe.   He has not worked since March 2, 2006.  He is irritable, moody and depressed.  He has difficulty sleeping and has nightmares.  He is in chronic pain.  Plaintiff is limited and or is prevented from engaging in many basic typical  physical activities.

Mr. Fentress was hired by Mr. McGee to perform vocational testing and to provide his opinions regarding the vocational rehabilitation options and future employment opportunities available to Mr. McGee.   Mr. Fentress reviewed Mr. McGee's medical records, his pre-injury

-6-

employment information, educational history and biographical background.   Also, he interviewed Mr. McGee and administered tests typical of a vocational rehabilitation examination.   Significantly, Mr. Fentress relied upon Dr. Dulske's opinions restricting Mr. McGee to sedentary work.   Notably, Mr. Chad Barker, who performed an FCE on Mr. McGee, testified that he would defer to Dr. Dulske's opinion with regard to Mr. McGee's physical restrictions following the FCE.   Mr. Fentress will provide his opinion that (1) Mr. McGee's pre-injury earning capacity was commensurate with his earnings with defendant at the time of this incident, (2) Mr. McGee has significant loss of access to the labor market and a significant loss of wage earning capacity, and (3) Mr. McGee's wage earning capacity in the future is minimum wage to $7.50 an hour.

Based upon his pre-injury wage earning and the benefits available with Rowan Companies, Inc. and in light of his disability and consequential diminishment of earning capacity, Harold Asher, plaintiff's retained economist, has opined and will testify that plaintiff has sustained an after-tax total economic loss of $3,416,092, assuming a full-time return to employment earning $7.50 an hour.

B.     Defendant provides a brief summary of the material facts in this case:

Plaintiff, Robert "Jake" McGee, is a 29 year old resident of Kosciusko, Mississippi. He graduated from high school in Kosciusko in 1998 and attended Holmes Community College from 1998 to 2001 where he was enrolled in an x-ray technician program.   Prior employment history includes a labor position in a body shop during high school, a laborer at Natchez Trace Gardens and a store clerk position with a grocery store owned by his family.   Plaintiff also worked for a couple months as a construction labor hand.   His employment was interrupted in 2002 when he was arrested and charged with possession of marijuana and methamphetamines.   He pled guilty to the charge and

was sentenced to three years incarceration, but the court suspended the sentence and he was placed on two years probation.  On January 19, 2001, plaintiff was arrested for possession of marijuana and a controlled substance.  He again pled guilty and was sentenced to two years incarceration with his previous probation being revoked.  Plaintiff was thus left with a total sentence of five years.  He was released on March 5, 2004, on an earned release supervision; however, on July 14, 2004, he was charged with possession of a controlled substance, driving while under the influence, felony possession of a controlled substance and possession of marijuana.  Because of this, on August 9, 2004, the Central Mississippi Correctional Facility revoked plaintiff's earned release supervision.  Ultimately, on November 3, 2004, plaintiff was discharged, having served his five year sentence.

From March 2004 to March 2005, plaintiff worked as a labor hand/ carpenter with his stepfather.  Thereafter, he was hired by Rowan as a roustabout earning $12.68 per hour.

Plaintiff underwent the usual roustabout training and worked for Rowan approximately a year until March 2, 2006 when he was injured when his left leg became pinned under the GORILLA IV's crane's floating block.  This occurred when plaintiff and two other crewmembers were changing out bridle lines.  In order to change out the lines, the starboard crane boom had been laid down and held in place by a strap connected to another crane.  The floating block was set on a steel plate welded to the crane boom.  The block was chained in place to prevent it from moving.  Four- by-fours were placed under the block.  The crew then removed one pin from floating block and removed the bridle line from one side.  This took approximately three to four

hours and was completed without incident.  The crew next attempted to pull the pin on the other side of the block in order to remove the second bridle line.  As the pin was being pulled out, the block shifted downward, causing the 4 x 4's to shift.  Plaintiff's left leg and knee were pinned between the 4 x 4's at the top of the block.  His leg was freed and he was evacuated from the rig to obtain shore-side medical attention.

Rowan asserts that plaintiff had placed himself in an obvious pinch point which is strongly suggestive of a lack of care or attention on his part.

Following the incident in suit, plaintiff was transported to Terrebonne General Medical Center where he was diagnosed with a contusion to his left leg without fracture of his tibia or fibula.  He was discharged on the same day with a return to restricted duty instruction.

On March 7, 2006, plaintiff was seen by Dr. W. T. McCraney, Jr., an orthopedist in Flowood, Mississippi.  He was initially diagnosed by Dr. McCraney with a crush injury to his left leg, in addition to MCL and ACL tears in his left knee.  He was treated conservatively (with physical therapy) in order to strengthen his left leg.  During the course of this conservative care, Dr. McCraney noted that plaintiff's left leg appeared to be "cool" and made the diagnosis of RSD.

In early May of 2006, plaintiff was seen by another orthopedic surgeon, Dr. Michael Dulske, a partner of Dr. McCraney's, who ordered EMG and NCS studies, both were interpreted as being normal.  On May 11, 2006, Dr. Dulske noted that there was no longer any temperature asymmetry between the two legs and no sensory loss or atrophy in the left leg and recommended that plaintiff undergo arthroscopic knee surgery.  On May 30, 2006, Dr. Dulske performed an anterior

cruciate ligament reconstruction using allograft and a medial collateral ligament repair.  Dr. Dulske was pleased with the outcome of the surgery and felt that plaintiff got a good orthopedic result.

Plaintiff continued to report subjective pain and hypersensitivity of his affected knee. He was referred to Trinity Pain Clinic who diagnosed Complex Regional Pain Syndrome II (also known as RSD).  He underwent a lumbar sympathetic block which was of no relief.  He then underwent a spinal cord implant, which reportedly decreased his pain by 50%, but plaintiff later ordered that it be removed.

In October of 2006, Dr. Dulske performed an arthroscopic debridement of plaintiff's left knee due to continued complaints of pain.  After the surgery, he recommended that plaintiff undergo an FCE.  It was about this time that Dr. Dulske became aware that plaintiff was abusing prescription medication, and as a consequence, recommended that plaintiff undergo psychiatric evaluation.  Plaintiff refused to heed this recommendation.

The FCE was conducted on April 18, 2007.  The therapist performing the FCE, Chad Barker, noted that plaintiff gave sub-maximal effort and even terminated the evaluation early, which Mr. Barker found was unjustified given the fact that there was no objective basis for doing so. Despite this fact, the FCE revealed that plaintiff was able to lift in the medium range, but had several positional limitations.  Further, the therapist, Mr. Barker, noted that plaintiff did not meet the AMA criteria, on that day, for a diagnosis of RSD.

Plaintiff has also been seen by Dr. Christopher E. Cenac in Houma, Louisiana, for an orthopedic IME and Dr. Joe Gonzales, in San Antonio, Texas, for a pain management/RSD

-10-

evaluation.  Dr. Cenac noted that plaintiff demonstrated significant self-limiting and non-organic illness behavior.  From an orthopedic standpoint, Dr. Cenac opined that plaintiff is employable at the medium level of physical activity and should avoid activities which require repetitive stooping, squatting, kneeling, twisting, bending, climbing or working at unprotected heights.  Plaintiff reached MMI as of January 10, 2007.  Dr. Cenac recommends no further orthopedic evaluation or treatment.

Plaintiff saw Dr. Gonzales on January 14, 2008.  Dr. Gonzales noted that plaintiff's lower extremities were symmetrical and that he had no evidence of left leg edema.  There were no temperature differences in the two lower extremities and no mottling, cyanosis or erythema were present.  Furthermore, he had no evidence of muscular atrophy above or below the left knee. Plaintiff was observed to be very reluctant and resistant to any active or passive range of motion of the knee and he was difficult to evaluate due to his overreaction to the slightest touch.  Dr. Gonzales found this to be inconsistent with plaintiff's ability to put on and take off a very tightfitting knee brace.  Dr. Gonzales concluded that plaintiff possibly had RSD in the past, but this condition had completely resolved with no current clinical evidence of RSD.  Dr. Gonzales agreed with Dr. Cenac that plaintiff manifested abnormal pain behavior and non-organic self-limiting behavior.

While Rowan does not dispute that plaintiff sustained a knee injury while changing out the bridle lines on the GORILLA IV, the injury has been repaired through two surgeries with good results.  Any sequella or complaints that plaintiff may have experienced due to the ACL and MCL tears should have long resolved.  Rowan directly disputes plaintiff's alleged RSD.  Rowan

-11-

submits that it is debatable whether plaintiff ever had the condition and extremely questionable whether he currently has the condition.  As early as May 11, 2006, Dr. Dulske noted that there was no longer any temperature asymmetry between the two legs and sensory loss or atrophy in the left leg which would support a finding of RSD.  This was confirmed by the therapist, Chad Barker, who performed the FCE on April 18, 2007, and noted that plaintiff had insufficient symptomology to support a diagnosis of RSD.  Plaintiff was later seen by Dr. Gonzales on January 14, 2008 and there was no objective evidence of RSD symptomology.  At his deposition, plaintiff had no observable signs of RSD.  However, in a onetime visit to Dr. Steven Sacks on January 15, 2009, he noted that plaintiff's leg presented with a light purple echymosis and his left lower extremity was palpably warmer than his right.  Dr. Gonzales will testify that RSD symptomology does not wax and wane and is not physiological for plaintiff to lack any symptomology supporting RSD in January of 2007 but have the symptomology in spades one year later.

Another consideration which makes a diagnosis of RSD highly suspect is plaintiff's obsession with the medical-legal aspects of his case.  Plaintiff has been noted to magnify his symptoms by several physicians and the FCE evaluator.  In addition, plaintiff has remarked to his psychologist, Arthur Tarbox, Ph.D., on several occasions that one of the primary sources of his anxiety is the fact, in his mind, that Rowan does not believe he has RSD, and on one occasion, he reported relief when a doctor confirmed an RSD diagnosis.  Rowan's vocational rehabilitation counselor, Dr. Cornelius Gorman, remarked that plaintiff's fixation on his physical condition and its impact on his lawsuit is unprecedented.

Even if plaintiff is unable to return to offshore employment, he is fully capable of resuming his vocational technical school studies to become a radiology technician or many other jobs to be identified by Dr. Gorman, vocational expert.  A survey of the market for this light duty position establishes that jobs are plentiful and pay an average wage of $18.00 per hour.  In addition, plaintiff could attend community college and learn a vocation where he could realize wages in the amount of $15.00 to $19.00 an hour.  This income would offset any loss plaintiff may encounter from not being able to return to the oilfield.

VII.    **UNCONTESTED MATERIAL FACTS**

      A.      Plaintiff, Robert Jacob McGee, was born on January 20, 1980;

      B.      Plaintiff, Robert Jacob McGee, was hired by defendant, Rowan Companies, Inc., in March 2005;

      C.      After his hire, plaintiff was permanently assigned to the drilling vessel, MODU ROWAN GORILLA IV;

      D.      Plaintiff , a seaman, was a member of the crew and a roustabout aboard the MODU ROWAN GORILLA IV;

      E.      Rowan Companies, Inc. was the owner and operator of the MODU ROWAN GORILLA IV at all relevant times;

VIII.   **CONTESTED ISSUES OF FACT**

      A.      Whether or not the lack of a job safety analysis regarding the operation of changing out the starboard side crane bridle lines rendered the MODU

-13-

ROWAN GORILLA IV an unseaworthy vessel and/or constituted Jones Act negligence;

B.      Whether or not the vessel's starboard-side crane's traveling block was properly secured, and, if not, was this a condition which rendered the MODU ROWAN GORILLA IV an unseaworthy vessel and/or constituted Jones Act negligence;

C.      Whether or not the actions of plaintiff's supervisor Alex Miles in prying out the bridle line pin with a pry-bar with the heavy tension on the traveling block constituted Jones Act negligence;

D.      Whether or not the inactions/ actions of the supervisory personnel of the MODU ROWAN GORILLA IV, including but not limited to their failure to inspect the work area and specifically the manner in which the block was secured, constituted Jones Act negligence under the circumstances;

E.      Whether or not the factors described above or the other facts surrounding the operation of changing out the bridle lines violated applicable safety statutes, regulations or industry standards, and, if so, was the violation(s) a cause of plaintiff's damages, and, if so, does the Jones Act incorporation of FELA §3 bar reduction of plaintiff's damages for comparative fault (if any) in accord with *Roy Crook & Sons, Inc. v. Allen*, 778 F.2d 1037 (5th Cir. 1985) and its progeny;

-14-

F.      Whether or not plaintiff is afflicted with the neurological disorder referred to as Reflex Sympathetic Dystrophy (RSD), a/k/a Complex Regional Pain Syndrome (CRPS), and, if so, the severity of his condition and whether or not this condition was caused by the injury of March 2, 2006 aboard the MODU ROWAN GORILLA IV;

G.      Whether or not plaintiff suffers with the condition of post-traumatic distress syndrome, anxiety and/or major depression;

H.      Whether or not plaintiff has permanent physical restrictions relating to the orthopedic injuries and surgical repairs to his left knee, and, if so, to what extent;

I.      Whether or not plaintiff is currently capable of performing gainful employment and the extent to which plaintiff is physically restricted by his various medical conditions;

J.      The amount of plaintiff's pre-injury earning capacity;

K.      The amount of plaintiff's post-injury earning capacity;

L.      The value of plaintiff's employee benefits offered by the defendant, including but not limited to, 401K, social security contributions, health insurance, life insurance and pension;

M.      The value of plaintiff's maintenance, cure and found;

N.    Whether or not plaintiff has reached maximum medical improvement (MMI), and, if so, the date at which MMI was reached;

O.    Whether Rowan was negligent concerning the incident in suit;

P.    Whether the GORILLA IV, its equipment, appurtenances and crew were reasonably fit for their intended purpose;

Q.    Whether plaintiff was provided a reasonably safe workplace;

R.    Whether plaintiff was provided adequate assistance to perform the task at hand;

S.    Whether plaintiff was properly trained to perform the task at hand;

T.    Whether plaintiff was contributorily negligent;

U.    Whether plaintiff placed himself in an obvious pinch point;

V.    What caused the floating block to slide;

X.    Plaintiff's criminal history and the impact on his damage claims;

Y.    Plaintiff's credibility concerning the extent of his damages;

Z.    The extent of plaintiff's injuries, if any;

AA.   The extent of plaintiff's damages, if any;

BB.   Whether plaintiff has, or ever had, RSD;

CC.   Plaintiff's non-organic or self-limiting illness behavior;

DD.   Plaintiff's medical prognosis;

EE.   The ability of plaintiff to return to the workforce;

-16-

FF.     Plaintiff's future vocational options;

GG.     The extent of plaintiff's economic disability, if any; and

HH.     Plaintiff's entitlement to loss of fringe benefits, if any.

IX.     **CONTESTED ISSUES OF LAW**

A.      Any and all issues of law inherent in the above listed contested issues of fact, to wit, whether or not the vessel was unseaworthy, whether or not defendant was negligent under the Jones Act, whether or not safety statutes, regulations or standards were violated, and if so, whether or not FELA §3 bars reduction of damages for plaintiff's comparative fault, if any; whether or not the events of March 2, 2006 were the cause of plaintiff's damages, the extent and amount of plaintiff's damages, including but not limited to general damages for physical and mental pain and suffering, emotional distress, past and future medical expenses, past lost wages and employee benefits, future impairment of earning capacity and future wage loss and employee benefits, maintenance, cure and found;

B.      Whether or not plaintiff is entitled to pre-judgment interest;

C.      Whether plaintiff is entitled to 401(k) benefits, and other fringe benefits, when he was not enrolled in those programs while employed by Rowan.

X.      **EXHIBITS**

Plaintiff may introduce the following exhibits into evidence:

1.      Plaintiff's medical records;  **OBJECTED TO AS HEARSAY AND CUMULATIVE.**

2.      Plaintiff's hospital records;

3.      Plaintiff's medical and hospital bills;

4.      Plaintiff's tax returns;

5.      Plaintiff's earnings records with Rowan Companies, Inc.;

6.      Benefit summaries of fringe benefits provided by Rowan Companies, Inc.;  **OBJECTED TO AS IRRELEVANT AS TO ANY BENEFIT PLAN WHICH PLAINTIFF WAS NOT ENROLLED IN.**

7.      Accident report;

8.      IADC reports;

9.      Daily reports;

10.      Photographs of the vessel and crane;

11.      Diagrams of the vessel and crane;

12.      Any exhibit not now known but which may become known prior to trial and which is provided to defendant;

13.      Any exhibit listed by any other party.

Rowan may introduce the following exhibits into evidence:

1.      Rowan Incident Report dated March 2, 2006;

2.      IADC Reports;

3.      Daily Reports;

4.      Plaintiff's personnel file with Rowan;

5.      Surveillance videotape of plaintiff;   **OBJECTION, NOT PRODUCED THROUGH DISCOVERY OR TIMELY PROVIDED TO PLAINTIFF**

**6.**      Surveillance photographs of plaintiff;   **OBJECTION, NOT PRODUCED THROUGH DISCOVERY OR TIMELY PROVIDED TO PLAINTIFF**

7.      Photographs of the GORILLA IV, including crane;   **OBJECTION, NOT PRODUCED THROUGH DISCOVERY OR TIMELY PROVIDED TO PLAINTIFF**

8.      Diagrams of the GORILLA IV, including crane;   **OBJECTION, NOT PRODUCED THROUGH DISCOVERY OR TIMELY PROVIDED TO PLAINTIFF**

9.      Rowan's Blue Cross/Blue Shield of Texas Benefits Summary;

10.      Rowan's Summary Plan Description of Group Medical Benefits for active employees;

11.      JSA pertaining to crane bridle lines; **OBJECTION, NOT PRODUCED THROUGH DISCOVERY OR TIMELY PROVIDED TO PLAINTIFF**

12.      Safety Meeting Minutes;

13.      Portions of the SEMS Manual;

14.     Plaintiff's IRS records;

15.     Plaintiff's Social Security earnings records;

16.     Maintenance, gift and cure printout;

17.     Personnel file from Casey Sanders;

18.     Records from Holmes Community College;

19.     Plaintiff's criminal records;     **OBJECTION, RELEVANCE AND UNDULY PREJUDICIAL**

20.     Records from Cornerstone Rehabilitation of Kosciusko; **OBJECTION, HEARSAY AS TO ANYTHING OTHER THAN HAND WRITTEN NOTES**

21.     FCE Report; **OBJECTION, HEARSAY AND CUMULATIVE**

22.     Records from Tupelo Physical Therapy and Sports Rehab; **OBJECTION, PLAINTIFF WAS NOT TREATED AT THAT FACILITY**

23.     Records of Surgicare of Jackson;

24.     Records of MAE Physicians Surgery Center;

25.     Records of Kosciusko Medical Clinic;

26.     Records of River Oaks Hospital;

27.     Records of Trinity Pain Clinic;

28.     Records of Mississippi Diagnostic Imaging Center;

29.     Records of Dr. Michael C. Graeber, Muscle and Nerve, PA;

30.     Records from Montford Jones Memorial Hospital;

31.     Any and all diagnostic and imaging studies; and

32.     Any and all hospital or medical facility records.

**XI.   DEPOSITION TESTIMONY**

    A.     Plaintiff reserves the right to introduce into evidence the following depositions:

    1.     Arthur R. Tarbox, Ph.D.;

    2.     Ranjit Patel, M.D.; (OBJECTED TO BY DEFENDANT AS CUMULATIVE)

    3.     Michael Dulske, M.D.;

    4.     Any witness who is unavailable for trial outside the subpoena power of this Court.  Plaintiff reserves the right to introduce further depositions offered by plaintiff or taken prior to trial.

    B.     Rowan reserves the right to introduce into evidence the following depositions:

    1.     Chad Barker; and

    2.     Any witness who is unavailable for trial or outside the subpoena power of this Court.   Rowan reserves the right to introduce further depositions offered by plaintiff or taken prior to trial.

**XII.   DEMONSTRATIVE EXHIBITS**

Plaintiff reserves the right to use charts, graphs, models, schematics, diagrams and blowups of the exhibits listed above and further reserves the right to use photographs, models or drawings of the GORILLA IV and its crane, and possibly medical illustrations.

Rowan reserves the right to use charts, graphs, models, schematics, diagrams and blowups of the exhibits listed above and further reserves the right to use photographs, models or drawings of the GORILLA IV and its crane, and possibly medical illustrations.

### XIII.   WITNESSES WHO WILL OR MAY BE CALLED AT TRIAL

A.   Plaintiff's will or may call witnesses:

**WILL CALL:**

1.   Alex Miles
9421 Collinsville Martin Road
Collinsville, Mississippi 39325

On cross-examination, regarding the facts and circumstances of the operation of changing out bridle lines and the injury sustained by plaintiff.

2.   Brandon Stewart
1185 Bunkum Road
Ward, Alabama 36922

On cross-examination, regarding the facts and circumstances of the operation of changing out bridle lines and the injury sustained by plaintiff.

3.   Robert Jacob McGee
900 South Natchez Street
Kosciusko, Mississippi 39090

Plaintiff will testify regarding the facts and circumstances of his injury and his damages.

4.      E.G. Webster
        170 Deerwood Crossing
        Canton, Mississippi 39046

        Plaintiff safety/ liability expert will testify and provide the Court with
        expert opinion (in accordance with his report) regarding the facts and
        circumstances of the operations ongoing at the time of plaintiff's
        injury.

5.      Josh McGee
        199 Golf Course Road
        Kosciusko, Mississippi 39090

        Plaintiff's brother will testify about plaintiff's pre-injury emotional
        and physical condition and his post-accident emotional and physical
        condition.

6.      Carrie McGee
        900 South Natchez Street
        Kosciusko, Mississippi 39090

        Plaintiff's wife will testify regarding plaintiff's pre-injury physical
        and emotional condition and life and regarding plaintiff's post-injury
        physical and emotional condition and life.

7.      Dr. Michael Dulske  **(VIA DEPOSITION)**
        Capitol Orthopedic & Sports Medicine Center
        290 East Layfair Drive, Suite A
        Jackson, Mississippi

        Medical expert will testify about plaintiff's care, treatment, damages
        and prognosis.

8.      Dr. Arthur Tarbox **(VIA DEPOSITION)**
        2211 Norfolk Street, Suite 805
        Houston, Texas

        Expert psychologist will testify about plaintiff's treatment and
        prognosis.

9.      Nathaniel Fentress
        1151 North State Street, Suite 511
        Jackson, Mississippi 39202

        Expert vocational rehabilitation counselor will testify about plaintiff's earning capacity and future vocational challenges and opportunities.

10.     Harold Asher
        400 Poydras Street, Suite 2640
        New Orleans, Louisiana 70130

        Expert economist will testify regarding plaintiff's economic damages.

11.     Ranjit Patel, M.D. **(VIA DEPOSITION) (OBJECTED TO AS CUMULATIVE**
        102 Travis Street
        Webster, Texas 77598

        Expert neurologist will testify regarding plaintiff's care, treatment, damages and prognosis.

**MAY CALL:**

12.     Timothy Peavy
        12202 Hwy 80 West
        Meridian, Mississippi 39307

        Facts and circumstances of the operations ongoing at the time of plaintiff's injury.

13.     Steven Sacks, M.D.   **(OBJECTED TO AS CUMULATIVE)**
        3480 Fannin Street #1
        Beaumont, Texas 77701

        Expert pain specialist regarding the plaintiff's care, treatment, damages and prognosis.

14.    Edwin Dodd, M.D.
       Jackson Pain Center
       1151 N. State Street, Suite 311
       Jackson, Mississippi 39202

       Medical expert regarding plaintiff's care, treatment, damages and
       prognosis.

14.    Ronald B. Williams, M.D.;
       Trinity Pain Clinic
       1307 Airport road, Suite 2A
       Jackson, Mississippi 39232

       Medical expert regarding plaintiff's care, treatment, damages and
       prognosis.

15.    Any witness listed by any other party

Rowan will or may call the following witnesses at trial:

**WILL CALL:**

1.     Robert Jake McGee
       900 South Natchez Street
       Kosciusko, Mississippi 39090

       Plaintiff on cross-examination.

2.     Brandon Stewart
       1185 Bunkum Road
       Ward, Alabama 36922

       Will testify regarding the facts and circumstances of the incident in
       suit and plaintiff's employment with Rowan.

3.     Alex Miles
       9421 Collinsville Martin Road
       Collinsville, Mississippi 39325

-25-

Will testify regarding the facts and circumstances of the incident in suit and plaintiff's employment with Rowan.

4.      Christopher E. Cenac, Sr., M.D.
        210 New Orleans Boulevard
        Houma, Louisiana 70364

        Will testify regarding his medical evaluation of plaintiff.

5.      Joe G. Gonzales, M.D.
        Texas Physical Medicine
          & Rehabilitation Institute
        2833 Babcock Road, Suite 110
        San Antonio, Texas 78229

        Will testify regarding his medical evaluation of plaintiff.

6.      Cornelius E. Gorman, Ph.D.
        313 Biltmore Way
        Lafayette, Louisiana 70508

        Will testify regarding his vocational rehabilitation evaluation of plaintiff.

7.      J. Stuart Wood, Ph.D.
        500 Arlington Drive
        Metairie, Louisiana   70001

        Will testify regarding plaintiff's economic impairment, if any.

8.      Chad Barker, P.T.                    **(VIA DEPOSITION)**
        Tupelo Physical Therapy
        1743 Cliff Gookin Boulevard
        Tupelo, Mississippi 38801

        Will testify regarding his FCE evaluation of plaintiff.

**MAY CALL:**

-26-

1.      R. W. Hudson
        Rowan Companies, Inc.
        5450 Transco Tower
        2800 Post Oak Boulevard
        Houston, Texas  77056-6196

        May testify regarding the operation underway at the time of the
        incident in suit.

2.      Tim Peavey
        12202 Highway 80 West
        Meridian, Mississippi 39307

        May testify regarding the operation underway at the time of the
        incident in suit.

3.      Eric Martin
        2516 Beamon Road
        Kosciusko, Mississippi 39090

        May testify regarding the operation underway at the time of the
        incident in suit.

4.      Patrick Sims
        4032 Buck Creek Road
        Toxey, Alabama 36921

        May testify regarding the operation underway at the time of the
        incident in suit.

5.      Jessie Thornton
        Route 4, Box 5120
        San Augustine, Texas 75972

        May testify regarding the operation underway at the time of the
        incident in suit.

6.      Michael Dulske, M.D.
        Capital Orthopaedic & Sports Medicine Center

-27-

290 East Layfair Drive, Suite A
Flowood, Mississippi 39232

May testify regarding his evaluation and treatment of plaintiff.

7.      W. T. McCraney, Jr., M.D.
        Capital Orthopaedic & Sports Medicine Center
        290 East Layfair Drive, Suite A
        Flowood, Mississippi 39232

        May testify regarding his evaluation and treatment of plaintiff.

8.      Edwin Dodd, M.D.
        Jackson Pain Center
        1151 N. State Street, Suite 311
        Jackson, Mississippi  39202

        May testify regarding his evaluation and treatment of plaintiff.

9.      Michael C. Graeber, M.D.
        Muscle and Nerve, PA
        971 Lakeland Drive
        West Tower, Suite 560
        St. Dominic Medical Offices
        Jackson, Mississippi 39216

        May testify regarding his evaluation and treatment of plaintiff.

10.     Ronald B. Williams, M.D.
        Trinity Pain Clinic
        1307 Airport Road, Suite 2A
        Jackson, Mississippi 39232

        May testify regarding his evaluation and treatment of plaintiff.

11.     Michael G. Holman, M.D.
        Kosciusko Medical Clinic
        332 Highway 12 West
        Kosciusko, Mississippi 39090

May testify regarding his evaluation and treatment of plaintiff.

12.     William P. Hedrick
        Rowan Companies, Inc.
        5450 Transco Tower
        2800 Post Oak Boulevard
        Houston, Texas  77056-6196

        May testify as to maintenance, cure and personnel issues.

13.     Any witness listed by plaintiff.

14.     Any witness necessary to authenticate any documents.

This witness list was filed in accordance with prior court orders.  The parties acknowledge that no other witness shall be allowed unless agreeable to all parties and the addition of the witness does not affect the trial date.   As for the expert witnesses listed above, the parties certify that expert reports have been exchanged in accordance with prior court orders.

**XIV.**   THIS MATTER WILL BE TRIED TO THE COURT AS TO ALL ASPECTS OF THE CASE.

**XV.**   THE ISSUE OF LIABILITY WILL NOT BE TRIED SEPARATELY FROM THAT OF QUANTUM.

**XVI.**   THE PARTIES KNOW OF NO OTHER MATTERS WHICH MIGHT EXPEDITE A RESOLUTION OF THIS CASE.

**XVII.**   TRIAL SHALL COMMENCE ON AUGUST 24, 2009 AND IS ESTIMATED TO TAKE TWO (2) DAYS.

XVIII. This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injuries.

XIX.   Possibility of settlement of this case was considered.

XX.    **SIGNATURES**

STRAUSS & KING, APLC          BAYNHAM BEST, L.L.C.


/s/ *Rhett E. King*                       /s/ *T. Patrick Baynham*
Berney L. Strauss, #12527          T. Patrick Baynham, #
Rhett E. King, #23811               J. Calvin Box, #
406 Magazine Street, Suite 300     3850 N. Causeway Blvd., Suite 950
New Orleans, Louisiana 70130       Metairie, Louisiana 70002
504. 523-0033 (telephone)          504. 837-3878 (telephone)
504. 523-0109 (facsimile)          504. 837-8495 (facsimile)
rhettking@straussandking.com       tpbaynham@baynhambest.com



Done this _____ day of _____, 2009, in New Orleans, Louisiana.



_____
UNITED STATES DISTRICT JUDGE