UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT JACOB McGEE | * | CIVIL ACTION |
| VERSUS | * | NO. 08-4715 |
| ROWAN COMPANIES, INC. | * | SECTION "J" |
| | * | MAGISTRATE 4 |
| | * | JUDGE BARBIER |
| | * | MAGISTRATE JUDGE ROBY |

**TRIAL MEMORANDUM**

**NOW INTO COURT,** through undersigned counsel, comes defendant, Rowan Companies, Inc. ("Rowan"), and files this Trial Memorandum addressing certain legal issues which may be implicated by the testimony and evidence introduced at the trial of this matter.

**I.    LIABILITY.**

As the Court is aware, plaintiff, Robert Jacob McGee, injured his knee when a yoke and block of a crane he was working on shifted and pinned his leg, injuring his knee. These employees were doing the job – Robert McGee, Alex Miles (supervisor) and Brandon Stewart (roustabout).

1

Defendant, Rowan, admits that the yoke and block should not have shifted and, accordingly, Rowan is liable under the Jones Act and General Maritime Law in this matter. Because Rowan admits liability, it is submitting the depositions of Alex Miles and Brandon Stewart to the Court in lieu of their live testimony.

However, Rowan respectfully suggests to the Court that plaintiff, Robert McGee, bears some fault as well, since he was told by his supervisor, Alex Miles, who was next to him at the time of the accident, to move his leg out of the pinch point he had placed it in. Mr. McGee's leg was between the yoke and 4x4 boards holding the yoke. Mr. Miles recognized the hazard and advised Mr. McGee to move his leg. Obviously, Mr. McGee did not comply as his injury was due to his leg being in the very pinch point he had been warned about. (See Deposition of Alex Miles, p. 61).

Further, Brandon Stewart, the third crewmember at the site, also told Mr. McGee to move back prior to the accident. (See Stewart Deposition, p. 110).

Inasmuch as both of Mr. McGee's fellow crewmembers told him to move prior to his leg being pinned, Rowan respectfully suggests that he should bear some responsibility in this matter.

Rowan respectfully suggests that fault should be assigned with 75% fault to Rowan and 25% fault to Mr. McGee.

## II.     FELA § 53 BAR TO CONTRIBUTORY NEGLIGENCE DOES NOT APPLY.

It is likely that plaintiff will argue that his comparative fault should be barred by application of FELA § 53 and *Roy Crook & Sons, Inc. v. Allen,* 778 F. 2d 1037 (5th Cir. 1985). A regulatory violation can amount to negligence *per se* and potentially vitiate a finding of contributory negligence

when plaintiff proves the following five elements:

1. A violation of a safety statute or regulation;

2. The plaintiff's membership in the class of intended beneficiaries of the regulations;

3. An injury of the type against which the regulations are designed to protect;

4. The unexcused nature of the regulatory violation; and

5. Causation.

*Smith v. Trans-World Drilling Co.,* 772 F. 2d 157. It is important to note, however, that Judge Arceneaux in *Washington v. Dolphin Titan Intern., Inc.,* 1991 WL 161491 (E.D. La.), determined that a statutory violation, if proven, only negated the harsh contributory negligence rule in effect at the time of the promulgating of FELA § 53, which totally barred a seaman's recovery was at all contributorily negligent. Judge Arceneaux's rationale appears to be that when the maritime law adopted comparative fault principles, there was no longer any need or purpose for FELA §53's comparative fault bar when there is a finding of a statutory safety violation. As Judge Arceneaux indicates, comparative fault principles have done away with the necessity and purpose of *Roy Crook & Sons*.

Putting aside the *Washington v. Dolphin Titan* case for the moment, there is not even a basis for finding that the alleged violation of any of the statutes offered by plaintiff in this case falls within the parameters of FELA § 53. That is, the safety statutes or regulations plaintiff points to, chiefly through his expert, Geoff Webster, either are inapplicable or do not amount to a violation of a safety

3

statute for which the plaintiff was an intended beneficiary. Those regulations/statutes/conventions are: ILO Convention (No. 147), ILO Convention (No. 134), the Ports and Waterways Safety Act, 33 U.S.C. 1223, and the General Duty Clause, 33 CFR 142.40. As a general proposition, all four of these statutes/regulations/conventions offer extremely generalized provisions where no specific conduct or actions are proscribed. In effect, any time there is a finding of Jones Act negligence because the seaman was not provided a reasonably safe place to work there would be a finding of a violation of one or more of the general tenants set forth in these statutes/regulations/ conventions. Consequently, if a violation of any one of the above is considered a violation of a safety statute or regulation, then the concept of comparative fault no longer exists.

Moving more specifically to the statutes/regulations/conventions cited by Mr. Webster, it is apparent that they either do not apply or cannot constitute negligence *per se*. ILO Convention No. 134 was not even adopted by the United States so this, on its face, should bar its application. In addition, as it concerns the General Duty Clause, 33 CFR 142.4, the Fifth Circuit in *Dupre v. Chevron USA, Inc.,* 20 F. 3d 154 (5th Cir. 1994), held in footnote 13 the opinion that the violation of 33 CFR § 142.4 does not amount to negligence *per se*. (See also Judge Jones' descent at p. 160, citing prior Fifth Circuit case law that 33 CFR 142.40 was not enacted to provide safeguards or precaution for the safety of others).

Furthermore, the General Duty Clause seeks to prevent "recognized hazards" which include conditions "generally known among the persons and the affected industry as causing or likely to

4

cause death or serious physical harm to persons exposed." The testimony of the fact witnesses which will be introduced into evidence in this case points to the fact that there was never any determination as to why the block shifted when it did. The incident was more in the nature of a freak accident and is hard to place under the rubric of a "recognized hazard."

Considering application of the ILO Convention (No. 147), there is no indication that this Convention was enacted, then ratified by the United States, solely to provide safeguards or precaution for the safety of others so as to fall under the rationale of *Roy Crook & Sons*. In addition, it is Rowan's position that the Convention applies to drilling rigs only when they are being towed and not while they are anchored on location as was the GORILLA IV on the date of loss. Furthermore, the ILO Conventions in general are aimed at "governing authorities" and do not proscribe or promote behavior or activities of maritime employers. Rowan suggests that an alleged violation of this Convention should not amount to negligence *per se*.

Finally, for many of the same reasons that an alleged breach of the ILO Convention (No. 147) should not be held to be negligence *per se*, a violation of the Ports and Waterways Safety Act, 33 U.S.C § 1221. The Act essentially advances the role of the Coast Guard in supervising vessel traffic in ports, harbors and other waterways. The application of the Act is not focused on marine employers, nor, is there in any way any provision of the Act even touching upon safety of the rig operations in changing out bridle lines. The Ports and Waterways Safety Act, and any violation thereof, should not give rise to negligence *per se*.

**III.     RSD AND FAILURE TO MITIGATE.**

As the Court is aware, much of the disagreement between the parties in this matter involves plaintiff's claim that he has Chronic Regional Pain Syndrome (CRPS), also referred to as Reflex Sympathetic Dystrophy (RSD). Rowan's response to this will be threefold at trial. First, Rowan will argue that plaintiff did in fact have mild CRPS immediately following the accident. Dr. Dulske, Mr. McGee's treating physician, recognized it and wanted it resolved prior to his doing arthroscopic surgery on the knee. Dr. Dulske referred plaintiff to Dr. Dodd, and the CRPS resolved in a few week to the point that surgery was then scheduled. The real issue is whether Mr. McGee has had CRPS in 2007, 2008 and 2009 – and physicians will argue both ways at trial. However, one thing is uncontested. All of the physicians agree that, at most, the plaintiff's CRPS is mild – classifying it as CRPS I, as opposed to the debilitating CRPS II which has nerve involvement.

Secondly, Rowan will present at trial a Failure to Mitigate case. As will be seen in the various medical records at trial, plaintiff has not received any treatment for the alleged CRPS since mid-2007 – over two years ago. The treatment for CRPS is a combination of physical therapy, sympathetic blocks and spinal stimulation, and pain management. Dr. Gonzales, a CRPS expert from San Antonio, Texas, will testify that the programs for CRPS I are generally good with the majority of the cases resolving with a good treatment plan. Three different pain management facilities spoke with Mr. McGee about beginning a treatment plan in 2007. These facilities are the Trinity Pain Clinic, Kosciusko Medical Center and University Medical Center. Plaintiff rejected

treatment at all three clinics and, instead, opted to do nothing for the past 2+ years. This is the worst thing one can do if, in fact, one has CRPS.

Please note that plaintiff will not provide testimony at trial for the three facilities listed above.

IV.     **NO FUTURE MEDICALS OR LIFE CARE PLAN FOR CRPS.**

The hallmark of litigation involving CRPS is usually a "life care plan" often valued in the hundreds of thousands of dollars. Most of the plan usually involves future medical costs necessary to treat the CRPS. There is **no** such plan in this case and **no** testimony as to future medical costs. Rowan respectfully asserts that it is illogical for plaintiff on the one hand to argue to the Court that plaintiff is totally permanently impaired due to CRPS and yet provide no testimony as to future medical care or a life care plan.

V.     **CERTAIN ELEMENTS OF PLAINTIFF'S DAMAGES ARE NON-COMPENSABLE.**

Chiefly through his expert CPA, Harold Asher, plaintiff seeks to recover certain items of damages which are entirely speculative or not allowed under existing law.

   A.     **Plaintiff's CPA Uses a Legally Unsupportable Discount Rate.**

Under *Culver v. Slater Boat Co.,* 722 F. 2d 114 (5th Cir. 1983), the Fifth Circuit determined that in a bench trial, the court will be justified in utilizing an after tax discount rate of between 1% and 3%. A negative discount rate has been severely criticized in recent case law. In *Palmer v. Ascerco, Inc.,* 2007 WL 2381242 (N.D. Okla.), the court observed:

> While a discount rate of +1% is presumptively reasonable, this court is hesitant to allow testimony regarding a negative discount rate, because this provides a "double recovery" to the plaintiff. (Citations omitted).

*Palmer,* 2007 WL 2381242 at *4.

Mr. Asher has no justification for using a negative discount rate which results in only unnatural and skewed results.

### B. Plaintiff Should Not Be Entitled to Loss of Fringe Benefits for Programs He Was Not Enrolled In.

Plaintiff was not enrolled in Rowan's 401(k) Program and was not vested in Rowan's Pension Plan. In *Hernandez v. M/V Rajaan,* 841 F. 2d 582 (5th Cir. 1988), the appellate court reversed the trial court's award of fringe benefits to plaintiff when there was no evidence that he ever received fringe benefits from his employer. Furthermore, in *Michalesko v. Office Max,* 2006 WL 5186520 (M.D. Pa.), the court specifically required a factual predicate establishing that plaintiff had received fringe benefits in the past before it would allow plaintiff's economist to testify regarding the loss of same. Such a factual predicate is entirely missing in this case and there should be no award for lost 401(k) gain or any gains made through Rowan's Pension Plan.

### C. Plaintiff Is Not Entitled to Loss of Social Security Retirement Benefits.

Mr. Asher has calculated that 6% of plaintiff's net lost wages amount to his lost Social Security retirement (FICA) benefits. However, lost Social Security retirement benefits have been held to be a non-compensable item of damages in a personal injury case. In *Jenkins v. Kerr-McGee*

*Corporation,* 613 So. 2d 1097 (La. App. 3d Cir. 1993), the court discussed the recovery, *vel non*, of FICA contributions in a maritime case. The court held:

> The trial court erred, however, in adding employer FICA contributions to the net past lost wages amount. The worker is entitled to be made whole for what he has lost, i.e., his net income - what he would have received had he continued to work. *Madore v. Ingram Tank Ships, Inc.,* 732 F. 2d 475 (5th Cir. 1984). In other words, the lost income stream must be computed after deducting income taxes and Social Security taxes *the worker* would have paid had he continued to work. It is erroneous to thereafter add back the employer FICA contributions, which essentially represent the employer's half of contributions to the social security fund in the name of the worker. These payments, based upon a percentage of the gross amount paid to the worker, go directly from the employer to the federal government. The worker has no right to receive the resulting benefits until retirement or disability. [Plaintiff] would not have directly received these payments as part of his income had he continued to work. Therefore, the employer contributions were not "lost" to him.

*Jenkins,* 613 So. 2d at 1103. Plaintiff should not have any recovery for lost Social Security retirement (FICA) benefits.

                                        Respectfully submitted,

                                        BAYNHAM BEST, L.L.C.

                                          *s/ T. Patrick Baynham*
                                        T. PATRICK BAYNHAM, T.A. (#16805)
                                        JOHN CALVIN BOX (#18809)
                                        Two Lakeway Center - Suite 950
                                        3850 N. Causeway Boulevard
                                        Metairie, Louisiana 70002
                                        Telephone: (504) 837-3878
                                        Telecopier: (504) 837-8495
                                        E-Mail: tpbaynham@baynhambest.com

                                        Attorneys for Defendant,
                                        Rowan Companies, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system.

*s/ T. Patrick Baynham*