UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT JACOB MCGEE                                CIVIL ACTION

VERSUS                                            NO: 08-4715

ROWAN COMPANIES INC.                              SECTION: "J" (4)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter came on for bench trial on the merits on August 24 and 26, 2009. At the conclusion of the trial, the Court rendered partial Findings of Fact and Conclusions of Law orally, in accordance with Fed.R.Civ.P. Rule 52(a). The Court now issues additional Findings and Conclusions, as follows:

1. The complaint alleges claims based on the Jones Act, 46 U.S.C. § 30104 (formerly 46 U.S.C. § 688) and the General Maritime Law of the United States. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333, within its admiralty

1

and maritime jurisdiction.

2. Plaintiff, Robert "Jake" McGee, was employed by defendant, Rowan Companies, as a seaman and member of the crew of its drilling vessel, the GORILLA IV, in the capacity of a roustabout. He had been employed by Rowan since approximately March of 2005.

3. On March 2, 2006, McGee and his roustabout crew were assigned to assist in changing out the bridle lines on the starboard crane aboard the vessel. To do this, the boom was laid down on the deck and the block was chained to the boom.

4. After successfully removing one bridle line, the crew encountered difficulty while attempting to remove the second bridle line. One of the pins that secured the bridle line could not be removed, and the supervisor of the roustabout crew began using a crowbar to attempt to pry the pin loose so that the bridle line could be removed.

5. As the pin came free, the block unexpectedly moved, crushing McGee's leg between the block and the boom.

6. Rowan stipulated that its negligence caused or contributed to this accident.

7. McGee was not negligent and did nothing to cause or contribute to the accident. This was the very first time that McGee had engaged in this procedure, and he had no way of knowing or believing that he might be in a position of danger at the time. At all times, he was standing where he had to be to perform his assigned duties and/or where his direct supervisor instructed him to stand. Further, at all times, McGee was in the direct sight of his supervisor, who was in charge of the operation.

8. Rowan was 100% responsible for the accident and the injuries sustained by McGee.

9. McGee has reached maximum medical cure from his injuries, and is not entitled to any additional maintenance or cure benefits.

10. As a proximate result of the accident, McGee sustained a crush type injury to his left lower extremity when the heavy block,

weighing approximately 1500 pounds, pinned his leg between the block and the boom. He was trapped there for several minutes before the block could be lifted off of him. He was initially sent to the emergency room ashore, and ultimately referred by Rowan to an orthopedic clinic in Jackson, Mississippi. There, he was treated primarily by Dr. Dulske, an orthopedic surgeon.

11. The orthopedic diagnosis was that McGee had suffered injuries to his anterior cruciate ligament (ACL) and to his medial collateral ligament (MCL) of his left knee. He eventually underwent two separate surgical procedures to the left knee. Dr. Dulske also noted symptoms of reflex sympathetic distrophy ("RSD") of the left lower leg, and referred him to another physician for examination and treatment of that condition, as well as for clearance for the initial knee surgery.

12. RSD is a complex, not well understood condition that can result from injury to the autonomic nervous system in a traumatic event such as that experienced by McGee. The modern name for the condition is "Complex Regional Pain Syndrome" ("CRPS"). The condition is characterized by hypersensitivity to pain. Classic objective signs include temperature changes

in the affected extremity, coloration changes, mottling or swelling, atrophy, and unusual hair growth patterns. At various times, McGee demonstrated objective evidence of all of these symptoms or findings. In fact, the Court actually observed objective evidence of RSD or CRPS when McGee exhibited his leg during the trial testimony of Dr. Sacks, an expert in pain medicine. Although he underwent several different treatment modalities for this condition, including sympathetic nerve blocks and two tests of a spinal stimulator, the condition has persisted.

13. The Court finds, by a preponderance of evidence, that McGee does suffer from RSD or CRPS, that it resulted from his injury aboard the GORILLA IV, and that the condition is painful, disabling and permanent.

14. After listening to and observing McGee during his testimony at trial, the Court finds McGee to be entirely credible. There is no reason to doubt that he is in pain and has been unable to work since his injury.

15. McGee also suffers from post-traumatic stress disorder

(PTSD) and major depression as a consequence of his accident and injuries. Dr. Tarbox, an expert in psychology, testified about how this type of accident, where a person is suddenly trapped and crushed by a 1500 pound object, and is trapped there for some period of time before it can be lifted off him, can cause PTSD. The fact that McGee has been unable to return to work, and the way that has affected his family life, has resulted in major depression.

16. Jake McGee is presently 29 years old. He is a high school graduate. He attended community college in Mississippi for one year, where he had mixed grades. Vocational testing showed he has abilities to read and do arithmetic at about the 9th grade level. He has been disabled and has not returned to any work since the March 2006 accident. Rowan paid his full salary until October, 2007, in the total amount of $67,000.

17. Although McGee has permanent and disabling injuries, he is not going to be totally and permanently disabled. He will be able to return to some type of employment, most likely after obtaining some additional schooling or vocational training, and restricting himself to less physically demanding,

6

sedentary type work.

18. McGee's pre-injury annual net earnings were approximately $37,000 to $38,000.

19. From the time Rowan ceased paying his full salary, Mr. McGee has sustained an after-tax past loss of wages in the amount of $59,390.

20. Based on a work-life expectancy of approximately 29 years from date of trial, and assuming that McGee is capable of return to sedentary employment at approximately $7.25 to $7.50 per hour, he will sustain a loss of future earnings in the net present amount of $544,852.

21. Mr. McGee will sustain a loss of fringe benefits that amount to a present value of $109,222. He has also lost the benefit of employer provided meals while working offshore. The value of past meals lost is $8,925, and the value of future meals lost is $58,511.

22. The evidence shows that McGee will continue to incur

approximately $6,000 per year for medications and other future medical treatment, the present value of which is $184,039.

23. As a direct result of his left knee injury, Mr. McGee underwent two separate surgical procedures to repair the damages to his ACL and MCL.  His treating orthopedist has assigned a 50% permanent partial disability of the left lower extremity and a 20% permanent partial disability of the whole body.  For general damages including pain and suffering related to the knee injury, the Court awards $150,000 for past general damages, and $150,000 for future general damages.

24. With respect to the RSD/CRPS, which is painful, disabling and likely permanent, the Court awards past general damages of $250,000 and future general damages of $150,000.

25. For the PTSD and major depression, the Court awards $100,000 for past general damages, and $100,000 for future general damages.

26. In summary, as a consequence of the accident of March 2, 2006, the Court finds that Mr. McGee sustained the following

8

damages:

| | |
|---|---|
| Past Loss of Wages | $ 59,390.00 |
| Loss of Future Earnings | $ 544,852.00 |
| Loss of Fringe Benefits | $ 109,222.00 |
| Future Medical Expenses | $ 184,039.00 |
| Past loss of meals | $ 8,925.00 |
| Future loss of meals | $ 58,511.00 |
| Total Past General Damages | $ 500,000.00 |
| Total Future General Damages | $ <u>400,000.00</u> |
| TOTAL DAMAGES | $1,864,939.00 |

27. Pre-judgment interest on all past damages will be awarded from March 2, 2006 at the rate of 6% per annum, and post-judgment interest is awarded at the same rate on the entire judgment until paid. All costs are taxed against the defendant.

New Orleans, Louisiana, this 23rd day of September, 2009.

*[signature]*
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE